IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHERI DEXTER                                                    PLAINTIFF


        v.                          CIVIL NO. 20-5025


ANDREW M. SAUL, Commissioner
Social Security Administration                                 DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Cheri Dexter, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.        **Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on January 8, 2016, alleging an inability to work since December 23, 2015, due to injuries sustained in an automobile accident to include facial injuries and the loss of the left eye, anxiety, and depression. (Tr. 57, 178, 185). For DIB purposes, Plaintiff maintained insured status through June 30, 2018. (Tr. 10,

205). An administrative hearing was held on February 6, 2017, at which Plaintiff appeared with counsel and testified. (Tr. 27-54).

By written decision dated December 27, 2018, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). Specifically, the ALJ found Plaintiff had the following severe impairments: a vision impairment (loss of left eye); a major depressive disorder, moderate; and a generalized anxiety disorder. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to jobs that do not require depth perception; occasional peripheral vison on the left; the individual would have MODERATE limitations (means functioning in this area independently, appropriately, effectively, and on a sustained basis is fair) in the following areas: respond appropriately to usual work situations and to changes in a routine work setting; interact appropriately with the public, supervisors and coworkers.

(Tr. 14). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a landscape laborer, a dining room attendant, a marking clerk, and a ticket seller. (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 5, 2019. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 2). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 13-15).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

II.    **Evidence Presented:**

At the time of the administrative hearing held before the ALJ on February 6, 2017, Plaintiff, who was twenty-nine years of age, testified that she obtained a high school education.  (Tr. 32). The record reflects Plaintiff's past relevant work consists of work as a daycare worker, a human resources clerk, a short order cook, a fast food worker, a shuttle bus driver, and a home health aide. (Tr. 50).

The pertinent medical evidence in this case reflects the following. On December 23, 2015, Plaintiff was seen in the Washington Regional Medical Center emergency room after being involved in a motor vehicle accident. (Tr. 327-343).  Treatment notes indicated Plaintiff was intoxicated while driving at a high rate of speed on the highway and was involved in a head-on collision with a truck. Plaintiff was found to have severe left maxillary fractures with skin defects and a deformity with a left globe rupture, and trace pneumocephalus.  Plaintiff was noted as needing a higher level of care due to the severity of her injuries and was be transferred via air to the University of Arkansas for Medical Sciences (UAMS) in Little Rock.

On December 23, 2015, Plaintiff was admitted into UAMS to undergo trauma surgery to repair an open globe injury on the left. (Tr. 346-486). Plaintiff was scheduled to undergo further facial fracture repairs in one to two weeks after the swelling had decreased. Plaintiff was also noted to have a laceration on the left shoulder. Plaintiff was discharged on December 25th.

On December 31, 2015, Plaintiff was seen by Dr. Jennings R. Boyette for a left-sided periorbital trauma with severe facial fractures. (Tr. 487-512). Dr. Boyette noted that enucleation was being considered and Plaintiff was to see Dr. Pemberton at a later date. Plaintiff reported numbness of the left cheek and swelling on the left. Plaintiff was unable to open her left eye and

3

reported constant pain. Dr. Boyette noted Plaintiff's pain was controlled with narcotic pain medication. A plan of care to include surgical repair of the left side of the face and orbit was discussed.

On January 5, 2016, Plaintiff was seen by Dr. John D. Pemberton for a painful blind eye. (Tr. 513-551). Dr. Pemberton noted Plaintiff's family reported that Plaintiff drank a pint of whiskey and smoked one package of cigarettes a day. Once receiving informed consent, Plaintiff underwent the removal of her left eyeball and repair of her left orbit. Plaintiff was instructed to rest for the remainder of the day and to resume most normal activities the next day.

On January 11, 2016, Plaintiff established care with Dr. Larry Coker. (Tr. 322-325). Dr. Coker noted Plaintiff needed a referral for facial reconstruction surgery. Plaintiff was noted as an everyday smoker. Dr. Coker noted Plaintiff had a wreck in December and sustained injuries, to include the loss of her left eye, and multiple facial fractures. Upon examination, Dr. Coker noted Plaintiff ambulated normally. Dr. Coker noted Plaintiff exhibited good judgment and a normal mood and affect. Dr. Coker noted Plaintiff's left eye was absent. Plaintiff was noted to have normal muscle strength and tone and normal movement of all extremities.  Dr. Coker assessed Plaintiff with a fracture of an orbit and left shoulder pain. Dr. Coker noted Plaintiff was doing well and would be referred for surgery. Plaintiff was to return as needed.

On January 12, 2016, Plaintiff underwent surgery to repair facial bones and an orbital floor fracture performed by Dr. Boyette.  (Tr. 552-628).  Plaintiff was discharged on January 13th, with restrictions to include no lifting, driving or strenuous activity for two weeks.

On January 21, 2016, Plaintiff was seen by Dr. Boyette for a follow-up examination. (Tr. 629-636). Plaintiff reported her left cheek and upper lip were numb. Plaintiff was concerned about

4

being able to open her mouth fully on the left side. Dr. Boyette noted Plaintiff had not seen Dr. Pemberton for a follow-up. Dr. Boyette noted Plaintiff may require a scar revision of the left upper cheek. Plaintiff was counseled on allowing time for healing and sensory nerve regeneration. Plaintiff was to return for a follow-up in three months.

On January 21, 2016, Plaintiff also had a follow-up appointment with Dr. Pemberton. (Tr. 637-643). Dr. Pemberton noted Plaintiff denied any problems or concerns since the surgery. Plaintiff denied pain. Dr. Pemberton noted Plaintiff's wound looked great. The plan was for Plaintiff to have a prosthesis evaluation and fitting in three to four months depending on how the socket healed. Dr. Pemberton opined Plaintiff's scar fibrosis would improve with time and he fully expected Plaintiff's socket to support a prosthesis. Plaintiff was prescribed a polycarbonate lens to protect her right eye. Plaintiff was to return in three months for an evaluation.

On March 4, 2016, Plaintiff was seen by Dr. Coker for her depression.  (Tr. 320-322). Plaintiff reported anger episodes.  Plaintiff denied having any other problems. Upon examination, Dr. Coker noted Plaintiff ambulated normally. Plaintiff exhibited good judgment and a normal mood and affect. Plaintiff was noted to have normal muscle strength and tone and normal movement of all extremities. Dr. Coker assessed Plaintiff with a depressive disorder and anxiety. Dr. Coker noted Plaintiff would be sent to "psych" and started her on venlafaxine and clonazepam

On March 18, 2016, Plaintiff was seen by Dr. Coker for a follow-up for her anxiety. (Tr. 317-320). Dr. Coker noted Plaintiff felt the clonazepam was working but the Effexor was not. Dr. Coker noted Plaintiff was healthy-appearing and ambulated normally.  Plaintiff exhibited good judgment and a normal mood and affect. Plaintiff had normal muscle strength and tone and normal

extremities. Plaintiff had a normal gait and station.  Dr. Coker assessed Plaintiff with a depressive disorder and anxiety and prescribed medication.

On April 14, 2016, Plaintiff was seen for a follow-up appointment with Dr. Pemberton. (Tr. 644-658). Plaintiff reported she wanted to know if her eye socket looked fine. Plaintiff reported no significant change in vision since the previous visit. Plaintiff denied pain or discomfort. Upon examination, Dr. Pemberton noted significant orbital atrophy and a large orbital compartment compared to the right. Dr. Pemberton recommended implants outside the muscle cone to improve the fit of a future prosthesis. Plaintiff agreed with the plan.

On April 14, 2016, Plaintiff also had a follow-up appointment with Dr. Boyette. (Tr. 659-668). Dr. Boyette noted Plaintiff also saw Dr. Pemberton who recommended another eye surgery. Dr. Boyette noted Plaintiff exhibited normal mood, affect and tone.  Dr. Boyette noted Plaintiff had well healed left cheek scars under the left eye socket. Plaintiff had good left cheek bone contour, slightly flattened under the scar tissue. Dr. Boyette recommended finishing work to get Plaintiff an eye prosthesis.

On April 19, 2016, Plaintiff was seen by Dr. Coker for a medication management and follow-up for her depression. (Tr. 315-317). Plaintiff reported she could not remember to take her Venlafaxine twice a day and would like her medication changed to something that is taken once a day. Dr. Coker noted Plaintiff had good results on Effexor but had trouble with the second dose. Upon examination, Dr. Coker noted Plaintiff was overweight but ambulated normally. Plaintiff exhibited good judgment and a normal mood and affect. Plaintiff was noted to have normal motor strength and tone. Plaintiff was assessed with a depressive disorder, anxiety, and pain in her left eye.

On June 7, 2016, Plaintiff underwent facial implant surgery performed by Dr. Pemberton. (Tr. 669-706).

On June 15, 2016, Plaintiff was seen by Dr. Pemberton for a one week follow-up appointment status post facial surgery. (Tr. 777-785). Plaintiff complained of some irritation inside the socket. After examining Plaintiff, Dr. Pemberton recommended following up in six weeks and if Plaintiff was doing well to plan for a custom prosthesis fitting.

On July 1, 2016, Dr. Kristin Jarrard, a non-examining medical consultant, opined that Plaintiff did not have a severe physical impairment. (Tr. 62). On October 7, 2016, after reviewing the records, Dr. Clarence Ballard affirmed Dr. Jarrard's opinion. (Tr. 98-99).

On July 5, 2016, Dr. Jerry R. Henderson, a non-examining medical consultant, opined that Plaintiff did not have a severe mental impairment. (Tr. 63). On the same date, Dr. Henderson completed a Psychiatric Review Technique form opining that Plaintiff had mild restriction of daily activities; mild difficulties maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no recent repeated episodes of decompensation, each of an extended duration. On October 10, 2016, after reviewing the records, Dr. Christal Janssen affirmed Dr. Henderson's opinion. (Tr. 88).

On July 28, 2016, Plaintiff was seen by Dr. Pemberton for a follow-up appointment. (Tr. 786-798). Plaintiff complained of eye irritation. Plaintiff reported that her vision had not changed since her previous visit. Plaintiff denied pain. Upon examination, Dr. Pemberton indicated Plaintiff's eye looked great and planned a prosthesis fit. Plaintiff was to return in one year for a follow-up to evaluate her cheek and eyelid scars. Dr. Pemberton noted there had been an eighty to eighty-five percent improvement since December 2015.

On September 12, 2016, Plaintiff was seen by Dr. Coker for a follow-up for her anxiety and depression. (Tr. 712-717). Plaintiff also felt she was bipolar. Plaintiff wanted to discuss her medications. Upon examination, Dr. Coker noted Plaintiff was healthy-appearing. Plaintiff exhibited good judgment and a normal mood and affect. Plaintiff had normal muscle strength and tone and normal movement of all extremities.  Dr. Coker assessed Plaintiff with anxiety and depression.  Dr. Coker recommended increasing Plaintiff's clonazepam dosage.

On October 27, 2016, Plaintiff was seen for a follow-up evaluation for her prosthetic eye. (Tr. 730). Plaintiff was noted as tolerating the new eye prosthesis well.

On November 2, 2016, Plaintiff was seen by Jessica Kitchens, LPC. (Tr. 771-773). Plaintiff discussed her boyfriend's apology and request to come home. Plaintiff reported things were good with her boyfriend, as long as he remained sober. Ms. Kitchens gave Plaintiff a list of local Celebrate Recovery meetings to attend with her boyfriend.

In progress notes dated November 9, 2016, Ms. Kitchens noted Plaintiff processed that her boyfriend continued to remain sober and that they were doing well. (Tr. 768-770). Plaintiff reported she was working on completing a MADD course so that she could get her driver's license back. Once she had her license, Plaintiff reported she would start looking for a job. Plaintiff processed her history of substance abuse and her path to recovery.

On November 10, 2016, Plaintiff was seen for a follow-up evaluation for her prosthetic eye. (Tr. 729). Plaintiff noted some discomfort.

In progress notes dated November 16, 2016, Ms. Kitchens noted Plaintiff was in the process of looking for a job. (Tr. 765-767). Plaintiff was also hoping to take her MADD class and to get

her driver's license back in time to drive to her new job. Plaintiff reported she and her boyfriend were doing well.

In progress notes dated November 30, 2016, Ms. Kitchens noted Plaintiff was waiting to hear back about a job in a hospital cafeteria. (Tr. 761-763).  Plaintiff reported that the job might be full-time. Plaintiff indicated things continued to go well at home and that she was continuing with her case plan. Ms. Kitchens noted Plaintiff's mood was improved. Plaintiff reported she was able to spend time with her son on Thanksgiving.

In a letter dated December 2, 2016, Ms. Kitchens noted Plaintiff had completed six counseling sessions. (Tr. 760). Ms. Kitchens noted Plaintiff's mood appeared more positive. Plaintiff was actively looking for work and hoped to have her license back. Plaintiff's visits with her son were going well and she hoped her son would be in her home again soon. Ms. Kitchens noted Plaintiff appeared highly motivated to work on her goals.

In progress notes dated December 7, 2016, Ms. Kitchens noted Plaintiff processed being hired for a new job. (Tr. 755-757). Plaintiff expressed feeling some anxiety about change and feared others would ask about her eye. Plaintiff reported things continued to go well at home and that visits with her son were good. Plaintiff was glad she was turning her life around.

On December 8, 2016, Plaintiff underwent a psychological evaluation performed by Dr. Martin T. Faitak. (Tr. 802-806). Plaintiff reported she became involved with the Washington County Department of Human Services in August of 2016, when her child was taken from her. Plaintiff reported she had been with a friend and his girlfriend and had been drinking wine and taking mushrooms when someone assaulted her. Plaintiff said the police were called and she was arrested. She found out the next day that her eight year old son had been taken into DHS custody.

Plaintiff indicated her son was living with her brother and that she was able to see him once a week and to talk to him every night. Plaintiff reported she was no longer using alcohol and planned to attend AA meetings. While Plaintiff failed her first drug test for marijuana, she passed every other test. Plaintiff hoped to regain custody of her son. Plaintiff reported that she sometimes had a hard time breathing and related that to her smoking cigarettes. Plaintiff indicated she did not have good peripheral vision due to only having one eye. Plaintiff indicated she took medication for anxiety and depression. Plaintiff reported she occupied her time by watching television or doing chores. Plaintiff hoped to regain custody of her son, to get married and to find a job. After evaluating Plaintiff, Dr. Faitak recommended Plaintiff participate in individual therapy in order to improve her self-esteem and stabilize her mood. It was further recommended Plaintiff continue to attend AA and NA meetings in order to maintain her sobriety. It was recommended that Plaintiff be seen by a psychiatrist to determine if medication would stabilize her mood. Dr. Faitak opined Plaintiff would benefit from part-time volunteer work in order to increase her confidence and decrease her isolation.

In progress notes dated December 14, 2016, Ms. Kitchens noted Plaintiff would undergo a drug screen and fill out paperwork for her new job today. (Tr. 752-754). Plaintiff expressed dread about the initial start but knew she needed to push through. Ms. Kitchens noted Plaintiff continued to do well her with boyfriend at home.

In progress notes dated December 21, 2016, Ms. Kitchens noted Plaintiff called two hours before her scheduled session to cancel her appointment due to an emergency. (Tr. 751).

In progress notes dated December 28, 2016, Ms. Kitchens noted Plaintiff was very nervous but was mentally preparing for her new job. (Tr. 748-750). Plaintiff reported Christmas went well

and she was able to spend time with her son. Plaintiff indicated she had done all that had been required of her and hoped that the court would find that she deserved getting her son back.

In progress notes dated January 4, 2017, Ms. Kitchens noted Plaintiff was very tearful during the session. (Tr. 746-747). Plaintiff reported it was the first official day of her work and that she very anxious about others judging her due to her eye. Plaintiff also feared she would not be able to keep up with her job duties. Plaintiff indicated if she had her way she would rather not work and just stay home with her son. Plaintiff understood this was not an option for her. Plaintiff indicated her boyfriend continued to be very supportive.

In a letter dated January 6, 2017, Ms. Kitchens noted Plaintiff had completed ten counseling sessions. (Tr. 742).  Plaintiff was noted as making attendance regularly and taking an active role in her counseling during the session. Ms. Kitchens noted Plaintiff's mood was originally very down but had recently appeared more positive. Plaintiff reported her relationship with her live-in boyfriend had improved tremendously since her boyfriend stopped drinking. Plaintiff was noted as having started a new job at a hospital. Ms. Kitchens noted Plaintiff wanted to show that she could be a good mother to her son.

In progress notes dated January 11, 2017, Ms. Kitchens noted Plaintiff processed her new job being very difficult on her physically. (Tr. 739-741). Plaintiff requested starting with four-hour shifts to give her body time to adjust. Plaintiff reported she struggled with having to work and that she felt anxious about leaving her home. Ms. Kitchens noted Plaintiff showed no signs of beginning agoraphobia. Ms. Kitchens discussed the importance of not staying in and feeding her anxiety. Plaintiff was to continue to work toward increasing socialization at work.

In a progress note dated January 18, 2017, Ms. Kitchens noted Plaintiff was stable. (Tr. 736-738). Plaintiff processed her criminal court and having to go to jail for seven days. Plaintiff was worried about losing her job but she had talked to her employer. Plaintiff indicated her employer asked her to start back at eight-hour shifts and that she told her employer she was willing to increase her shift time. Ms. Kitchens noted this was Plaintiff's twelfth session but Plaintiff indicated she might continue with counseling as she now had insurance.

On September 27, 2017, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Terry L. Efird. (Tr. 812-815). Plaintiff reported she applied for disability due to extreme depression, anxiety, and the loss of vision in her left eye. Plaintiff reported she had not been treated by a psychiatrist but she had participated in counseling. Plaintiff reported her psychiatric medications had been somewhat beneficial. Plaintiff reported she could perform activities of daily living but these activities were impaired by her low energy level. Plaintiff reported she last worked full-time doing in-home healthcare two years ago.  Plaintiff denied having worked since that time. Plaintiff indicated she had had difficulty with both supervisors and co-workers and had been terminated from employment on two occasions. Dr. Efird noted Plaintiff drove to her appointment and presented appropriately dressed and groomed. Dr. Efird noted Plaintiff was missing her left eye. After evaluating Plaintiff, Dr. Efird assessed her with a major depressive disorder, moderate, and a generalized anxiety disorder.

With respect to adaptive functioning, Dr. Efird noted Plaintiff could drive unfamiliar routes with the help of GPS.  Plaintiff indicated she was able to shop alone but noted she usually shopped with her boyfriend.  Plaintiff indicated she talked to a friend about once a month but was otherwise socially isolated.  Plaintiff communicated and interacted in a socially adequate manner.  Dr. Efird

opined Plaintiff had the capacity to perform most basic cognitive tasks. Plaintiff appeared able to respond adequately and persist.

On the same date, Dr. Efird completed a mental medical assessment opining that Plaintiff's ability to understand, remember and carry out instructions was not affected by her impairment. (Tr. 809-811). Dr. Efird opined Plaintiff had moderate limitations with interacting appropriately with the public, interacting appropriately with a supervisor, interacting appropriately with co-workers, and responding appropriately to usual work situations and changes in a routine work setting. Finally, Dr Efird opined that Plaintiff's impairments did not impact her ability to concentrate, persist, maintain pace, or manage oneself.

## III.    **Applicable Law**:

The Court reviews "the ALJ's decision to deny disability insurance benefits de novo on the record to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." Combs v. Berryhill, 878 F.3d 642, 645-46 (8th Cir. 2017). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." Id. The Court considers "the record as a whole, reviewing both the evidence that supports the ALJ's decision and the evidence that detracts from it." Id. The Court will not reverse an administrative decision simply because some evidence may support the opposite conclusion. Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. Id.

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

## IV.   Discussion:

Plaintiff argues the following issue on appeal: 1) the ALJ's mental RFC assessment is vague; and 2) there is an unresolved conflict between the ALJ's mental RFC assessment, the

Dictionary of Occupational Titles (DOT), the vocational expert testimony and the occupations identified at Step 5.

### A.    Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability.  42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2018.  Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of December 23, 2015, her alleged onset date of disability, through June 30, 2018, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB, she must prove that on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death.  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).

With respect to Plaintiff's SSI application, benefits are not payable prior to the date of application, regardless of how far back disability may, in fact, be alleged or found to extend. See 20 C.F.R. § 416.335.  Therefore, the relevant period is from January 8, 2016, the date Plaintiff protectively applied for SSI benefits, through December 27, 2018, the date of the ALJ's decision.

### B.    Subjective Complaints and Symptom Evaluation:

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v.

Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  A review of the record revealed that during the relevant time period Plaintiff was able to take care of her personal needs, noting she sometimes needed to sit down when showering; to help take care of her son; to prepare simple meals; to do light house chores; and to shop in stores for food. (Tr. 252-259). The record further revealed Plaintiff sought and obtained work in a hospital cafeteria in November of 2016. (Tr. 761).

With respect to Plaintiff's physical impairments, while Plaintiff sustained serious injuries to her face in December of 2015, Plaintiff underwent surgical intervention and was noted as being up to eighty-five percent improved by July of 2016. Impairments that are controllable or amenable to treatment do not support a finding of total disability. Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).  Plaintiff's depression and anxiety symptoms were also noted as improved with the use of medication.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.    The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC."  Id.

In determining that Plaintiff maintained the RFC to perform work at all exertional levels with some non-exertional limitations, the ALJ considered the medical assessments of the examining and non-examining agency medical consultants; Plaintiff's subjective complaints; and her medical records.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined during the relevant time period.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

Plaintiff argues that while Plaintiff's RFC assessment includes work-related activities, the limitation of "moderate" with respect to Plaintiff's mental limitations is vague. As noted above, the ALJ determined Plaintiff had moderate limitations with respect to responding appropriately to usual work situations and changes in a routine work setting, and interacting appropriately with the public, supervisors, and coworkers. (Tr. 14). The ALJ defined moderate limitation as having a fair ability to function independently, appropriately, effectively and on a sustained basis. [1]

In making this mental RFC determination, the ALJ gave great weight to the opinion of Dr. Efird who evaluated Plaintiff on September 27, 2017. The record revealed that after evaluating Plaintiff, Dr. Efird completed a "Medical Source Statement of Ability To Do Work-Related Activities (Mental)," opining that Plaintiff's depression and anxiety did not affect her ability to understand, remember and carry out instructions or her ability to concentrate, persist, maintain pace, adapt or manage herself. Dr. Efird further opined that Plaintiff's depression and anxiety moderately affected her ability to interact appropriately with the public, coworkers, and supervisors; and to respond appropriately to usual work situations and changes in a routine work setting. The Court does not find the use of the word "moderate" to be vague in this case. After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination.

**D.      Hypothetical Question to the Vocational Expert:**

Plaintiff argues that two of the jobs the vocational expert found Plaintiff was able to perform were contradictory to Plaintiff's assigned RFC. Specifically, Plaintiff argues that the jobs

---

[1] The Court notes the definition of moderate is included on the Medical Source Statement of Ability To Do Work-Related Activities (Mental) that was completed by Dr. Efird. (Tr. 809).

as a landscape laborer and the ticket seller require duties that exceed the moderate non-exertional limitations set forth in the RFC.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Even if the vocational expert's opinion concerning the jobs of landscape laborer and ticket seller conflicted with the Dictionary of Occupational Titles, which the Court does not find, the vocational expert provided job numbers for two other occupations, marking clerk and dining room attendant, which were not challenged by Plaintiff and exist in significant numbers in the national economy.

Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing jobs in the national economy. See Grable v. Colvin, 770 F.3d 1196, 1202 (8 Cir. 2014)(holding an ALJ may rely on a vocational expert's testimony if at least some of the identified jobs are consistent with the claimant's RFC).

## V.    Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of December 2020.

/s/   *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE